IN THE UNITED STATES DISRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA     :     Criminal Action No. 16-29 (LPS)
         :
         vs.          :
         :
JUSTIN R. GULISANO a/k/a          :
Emma Alexandra Gulisano          :

## **DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Justin R. Gulisano a/k/a Emma Alexandra Gulisano, by her attorney, Thomas A. Dreyer, Esquire, hereby respectfully submits a Sentencing Memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives contained in 18 U.S.C. Section 3553(a).   She herein contends that a term of imprisonment of 120 months is sufficient but not greater than necessary to comply with the provisions of Section 3553(a).

## **Sentencing After _Booker_**

The Federal Sentencing Guidelines ("FSGs") are advisory.   *United States v. Booker*, 125 S.Ct. 738, 756 (2005).   They are just one of several equally important sentencing factors outlined in 18 U.S.C. Section 3553(a).

In *United States v. Colon*, 474 F.3d 95, 97 (3d Cir.2007), the Third Circuit outlined the post-*Booker* status of the FSGs by stating:

> [S]entences now must be reasonable taking into account all of the factors in 18 U.S.C. [Section] 3553(a) (section 3553(a)") of which the now advisory guidelines are but one.   Thus, after *Booker*, the guidelines are, in a sense, doubly diminished in significance, first because they are only advisory, and second because the courts must give increased attention to the other sentencing factors in section 3553(a).

In *United States v. Kennedy*, 554 F.3d 415, 423 (3d Cir.2009), the Third Circuit\
indicated:

> Since *Booker*, district judges have substantial discretion to impose
> sentences anywhere within the statutory range, as long as those
> sentences are reasonable under our deferential standard of review
> for abuse of discretion.   We expect that district judges will
> examine the particular facts of each case in fashioning a just
> sentence without getting bogged down in formalistic technicalities.
> Sentencing is not a mathematical calculation; it is a human
> enterprise that requires wisdom, judgment and old-fashioned
> common sense.   To the extent the plain language of the Guidelines
> - including its Commentaries and Application Notes - would lead
> to unfair results, we repose our confidence in district judges to
> apply fairly and justly the factors set forth in 18 U.S.C. Section
> 3553(a), which may require variances from the Guidelines range.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."   Section 3553(a)(2) lists these purposes as:

> (A)  to reflect the seriousness of the offense, to promote respect for
> the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and,
>
> (D)   to provide the defendant with needed educational or vocational
> training, medical care, or other correctional treatment in the
> most effective manner.

This is known as the "Parsimony Provision".

Section 3553(a) further directs sentencing courts to consider the following factors in determining the sentence minimally sufficient to comply with the purposes enumerated in Section 3553(a)(2):

-2-

1) the nature and circumstances of the offenses and the history and characteristics of the defendant;

2) the kinds of sentences available;

3) the kinds of sentences and the sentencing range established by the FSGs;

4) any pertinent policy statement issued by the Sentencing Commission which is in effect on the date that the defendant is sentenced;

5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,

6) the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1) and (a)(3) through (a)(7).

A sentencing court is given discretion by other statutory provisions as well. Under 18 U.S.C. Section 3582(a), imposition of a term of incarceration is subject to the following limitation:   in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to 'recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation".   (Emphasis added.)   *See also United States v. Manzella*, 475 F.3d 152, 156-61 (3d Cir 2007).   Under 18 U.S.C. Section 3661, "*No limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence".   (Emphasis added.)

A sentencing court must consider <u>all</u> of the Section 3553(a) factors, and not just the FSGs, in exercising its discretion in determining a sentence which is sufficient but not greater than necessary to meet the goals of sentencing.   In *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.2006), the Third Circuit instructed the district court to comply with the following three-

-3-

step sentencing process:

1. Calculate the defendant's guideline range precisely as was done pre-*Booker*;

2. Formally rule on both parties' departure motions and state on the record whether it is granting a departure based on a specific guideline provision and how that departure affects the guideline calculation; and,

3. Exercise its discretion by considering the relevant Section 3553(a) factors in setting the sentence it imposes regardless whether the sentence varies from the sentence calculated under the FSGs.

*See also United States v. Grier, 585 F.3d 138, 141-42* (3d Cir.2009).   In other words, the district court is free to make its own reasonable application of the Section 3553(a) factors and to reject, after due consideration, the advice of the FSGs.   *United States v. Langford*, 516 F.3d 205, 215 (3d Cir.2008).

Moreover, in *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 455 (2007), the Supreme Court rejected any requirement that an extraordinary variance from the guideline range must be justified by extraordinary circumstances, thereby strongly reinforcing the sentencing court's discretion to tailor a sentence to the particular facts and circumstances of each individual case, regardless of where its sentence lies in relation to the guideline range.

## Application of the Statutory Sentencing Factors to the Instant Case

The following factors must be considered in determining what length of sentence is sufficient but not greater than necessary to satisfy the purposes of  sentencing:

**1.  The Nature and Circumstances of the Offense and the History and Characteristics of The Offender**

**(A)  Nature and Circumstances of the Offense**

A recitation of the facts of Ms. Gulisano's criminal conduct is outlined in Paragraphs 11-18 of the revised Presentence Investigation Report ("PSR").

-4-

On June 30, 2015, Ms. Gulisano was taken into custody at the request of the Delaware State Police by officers of the Village of Newark Police Department in Newark, New York.   The government subsequently adopted this case.

On March 10, 2016, an Indictment charging Ms. Gulisano with Sexual Exploitation of a Minor in violation of 18 U.S.C. Section 2251(a) and (e), Distribution of Child Pornography in violation of 18 U.S.C. Section 2252(a)(2) and (b)(1) and Interstate Threatening Communications in violation of 18 U.S.C. Section 875(d) and 841(a)(1) was filed.

On April 4, 2016, Ms. Gulisano did not object to the government's request for pretrial detention and she has been incarcerated at the Federal Detention Center ("FDC") in Philadelphia ever since.

The parties subsequently entered into a written Memorandum of Plea Agreement. On October 2, 2017, the government filed a Superseding Information charging Ms. Gulisano with Enticement of a Minor to Engage in Sexual Activity in violation of 18 U.S.C. Section 2422(b) and she entered a plea of guilty to this offense before the Honorable Leonard P. Stark.

The mandatory minimum term of imprisonment for a violation of Section 2422(b) is 10 years or 120 months.   Pursuant to Paragraph 9 of the Memorandum of Plea Agreement, the government has agreed that it will not seek a term of imprisonment in excess of 360 months.

Sentencing is scheduled for May 30, 2018.

**History and Characteristics of Ms. Gulisano**

Ms. Gulisano was born on January 15, 1992 and is 26 years of age.   She is single and has no children.

Ms. Gulisano had a very difficult childhood.   Her father, John Gulisano, left the

home when she was a young child because he had an arrest warrant for driving under the influence.   Her mother, Lisa Knorr, married Robert Knorr a short time later.   They separated when she was about 15.

Ms. Gulisano's mother was an alcoholic and emotionally distant from her and the atmosphere of her home life was emotionally abusive.   She moved numerous times and had very unstable living arrangements.   At times she lived with her mother, with John, with Robert, with her girlfriend, at various treatment centers and with her AA sponsor.   See Pages 3-5 of the Psychological Evaluation prepared by Laura Cooney-Koss, Psy.D. on October 28, 2016 which is being forwarded by mail.

Ms. Gulisano earned a high school diploma in 2011.   She attended a community college for a short time.   She acquired a certificate in Microsoft Office Software in 2007.

Ms. Gulisano has been employed at various jobs since she was 16 years old. They include a grocery store for 10 months, a convenience store for 18 months (where she became the assistant manager) and an auto parts store for 6 months.   She also worked at a McDonald's Restaurant for a summer and at a masonry business.

Ms. Gulisano rendered volunteer services to a public library in Newark, New York from February 2015 to June 2015and as a suicide watch companion at the FDC from February 2017 to March 28, 2018 when she was transferred from the medical unit.   Although she was unsuccessful, she also tried to start informal AA meetings at the FDC.   See Page 8 of Dr. Cooney-Koss' evaluation.

Ms. Gulisano has been diagnosed as suffering from Borderline Personality Disorder, Manic Depressive Disorder and Generalized Anxiety Disorder.   She has tried to kill

-6-

herself four times (in 2007, 2009, 2011 and June 2014).   She mutilated herself by cutting on numerous occasions starting when she was 12.   See Page 10 of Dr. Cooney-Koss' evaluation.

Ms. Gulisano was sexually abused from ages 7 to 16 by a male cousin who was four years older than her.   At no time has she received psychiatric treatment for the consequences of this abuse.

Ms. Gulisano has a long history of abusing numerous controlled substances and alcohol from an early age.   She started using narcotic pills when she was 19; inhalants such as gasoline, at 16; marijuana, at 13 or 14; alcohol, at 7 or 8.   See Paragraphs 72-82 of the PSR and the records from the Finger Lakes Addictions Counseling & Referral Agency ("FLACRA") which are being forwarded by mail.   She hereby requests that the Court recommend to the United States Bureau of Prisons ("BOP") that she be admitted into its Residential Drug Abuse Treatment Program ("RDAP").

Ms. Gulisano has been involved with AA since she was 19 and regularly attended five AA meetings each week prior to her incarceration.   She was the secretary of Newark Noon AA Group from 2014 to 2015.

Ms. Gulisano has three crushed vertebrae in her mid-back from a fall in 2007 which resulted from an overdose of cough medicine.   She passed out and fell backwards, striking a bench in the hallway of her home.   She currently takes Tylenol for back pain.

Ms. Gulisano is currently transitioning from the male gender to the female gender.   She has struggled much of her life to find herself amidst her mental health disorders, the alcoholic household in which she was raised as a child, her own abuse of alcohol and drugs and the psychological disconnect between her subconscious and her body.   At the FDC, she has

talked to numerous mental health professionals about her desire to transition her sex from male to female.   Beginning in July 2016, she has seen Dr. Beth Daniels, a psychologist, on a regular basis.   She was subsequently diagnosed with Gender Dysphoria in Adults.   In February 2017, she requested to start hormone replacement therapy; Dr. Odom-White, a psychiatrist, and Dr. Laughingwell, a medical doctor, approved this request.   On May 5, 2017, she began to take an androgen blocker and estrogen.   She has been on hormone replacement for over a year and hopes to undergo sex reassignment surgery in the future.

**2.   The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

**(A)   To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

A sentence of imprisonment of 120 months clearly meets the objectives of reflecting the seriousness of the offense, promoting respect for the law and providing just punishment for the offense.

**(B)   To afford adequate deterrence to criminal conduct**

A sentence of imprisonment of 120 months is sufficient to achieve the goals of general deterrence and specific deterrence.

**(C)   To protect the public from further crimes of the defendant**

The goal of protecting the public from further crimes committed by Ms. Gulisano will be achieved by a sentence of imprisonment of 120 months.

**(D)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Gulisano will greatly benefit from the medical care in aiding her transition to being a female which will be provided by the BOP.   It currently provides mental health

-8-

treatment and hormone replacement therapy to her.   It is still unknown whether the BOP will provide treatment for sex reassignment surgery in order to complete a full physical transition to the female sex.   It is her hope that she will be allowed to receive this treatment as soon as possible; this will alleviate her gender dissonance which causes an insurmountable level of mental distress and pain just by living as the wrong sex.   In order for her to receive adequate mental health care while incarcerated, she must be allowed to receive the sex reassignment surgery.   This procedure will greatly increase her chances to succeed in society upon release. She will no longer have to struggle within herself regarding her external identity in the world; she will have a much higher level of self-esteem.   All of these benefits of the sex reassignment surgery will tremendously aid her rehabilitation and re-entry into society.

**3.   The Kinds of Sentences Available**

A sentence of imprisonment is available.   18 U.S.C. Section 3581.   A fine is available (although Ms. Gulisano is represented by court-appointed counsel).   21 U.S.C. Section 841(a)(1) and (b)(1)(A).

**4.   The Sentencing Range Established by the Sentencing Commission**

The PSR calculates the Guideline Range of Imprisonment as follows:

1.   A Base Offense Level of 32  pursuant to U.S.S. G. Sections 2G2.1(a) and 2G1.3(c)(1).

2.   A two-level increase because the offense involved a minor who had attained the age of 12 years but who had not attained the age of 16 years pursuant to U.S.S.G. Section 2G2.1(b)(1)(B).

3.   A two-level increase because Ms. Gulisano knowingly engaged in distribution

-9-

pursuant to U.S.S.G. Section 2G2.1(b)(3).

      4. A two-level increase because, for the purpose of producing sexually explicit material, the offense involved the use of a computer to solicit participation by a minor in sexually explicit conduct pursuant to U.S.S.G. Section 2G2.1(b)(6)(B).

      5. A five-level increase because Ms. Gulisano qualifies as a repeat and dangerous sex offender against minors in that the instant offense is a covered sex crime and she engaged in a pattern of activity involving prohibited sexual conduct pursuant to U.S.S.G. Section 4B1.5(b).

      6. A three-level reduction for acceptance of responsibility pursuant to U.S.S.G. Section 3E1.1.

      7. Total Offense Level – 40.

      8. Criminal History Category III; 5 criminal history points.

      9. Range – 360 months to life.

See Paragraphs 21-49 and 90 of the PSR.

**5. Pertinent Policy Statement**

      There are no applicable pertinent Policy Statements.

**6. The Need to Avoid Unwarranted Sentencing Disparities**

      Ms. Gulisano requests that the Court review the following cases:

      1. On August 12, 2014, the Court sentenced Kirk A. Simmons to the mandatory minimum term of imprisonment of 120 months for Attempted enticement and coercion of a minor in violation of 18 U.S.C. Section 2242(b) in Criminal Action No. 13-97 (LPS). Mr. Simmons and a detective from the Delaware State Police Child Predator Task Force posing as

the father of a 13-year-old girl met on-line.   He later received photographs of the detective's "daughter".   He subsequently traveled to the Sleep Inn Hotel in Newark, Delaware in order to engage in sex acts with this 13-year-old.   He was arrested in the hotel parking lot.   After law enforcement seized a digital camera and a laptop from this vehicle, he was taken to Troop 2 where he stated that he intended to engage in sex acts with the girl and to take pictures of this activity for future enjoyment.   At no time did Ms. Gulisano travel from New York to Delaware to meet the victim.

    2.   On May 3, 2013, the Court sentenced Scott A. Rupert to the mandatory minimum term of imprisonment of 120 months for Attempted enticement and coercion of a minor in violation of 18 U.S.C. Section 2442(b) in Criminal Action No. 12-05 (LPS) (he also sentenced him to a consecutive term of imprisonment of 120 months for his registered sex offenders violation of 18 U.S.C. Section 2260A).   Mr. Rupert was a 42-year-old man from Pottstown, Pennsylvania when he and a special agent of the Department of Homeland Security posing as a 14-year-old girl met on-line.   He later received photographs of a girl who was 12-14 years old.   He subsequently traveled from Pennsylvania to the Bellevue State Park in Delaware to meet the girl and take her to a local hotel or motel where they would engage in sexual conduct. At no time did Ms. Gulisano travel from New York to Delaware to meet the victim.

**7.  The Need to Provide Restitution to Any Victims of the Offense**

    The victim has not made a claim for restitution.   See Paragraph 102 of the PSR.

### Proposed Statement of Reasons Pursuant to 18 U.S.C.
### <u>Section 3553(a) for a Downward Variance</u>

The Court should impose a sentence which varies from the Guideline Range of Imprisonment Range of 360 months to life for the following reasons:

1.   This range is unreasonably excessive.   The Eighth Amendment's prohibition against cruel and unusual punishment guarantees individuals the right not to be subjected to excessive punishment.   *Miller v. Alabama*, --- U.S. ---, 132 S.Ct. 2455, 2463, 183 L.Ed.2d 407 (2012).   The concept of proportionality is central to this constitutional amendment; embodied in its ban on cruel and unusual punishment is the precept of justice that punishment for crime should be graduated and proportioned to the offense.   *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 850 (2010); *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 2649, 171 L.Ed.2d 529 (2008).

2.   Ms. Gulisano received a two-level enhancement because she used a computer. See Paragraph 29 of the PSR.   The Court has the discretion to vary from the range calculated, in part, by the use of this enhancement because "virtually all child pornography offenders use computers".   *See U.S. v. Husmann*, 765 F.3d 169, 172 (3dCir. 2014).

3.   Dr. Cooney-Koss concluded that there is nothing in Ms. Gulisano's history which suggests a predatory or repetitive quality to her past inappropriate decisions.   See Page 20 of her evaluation.

4.   Dr. Cooney-Koss concluded that there was nothing to suggest that Ms. Gulisano formed a relationship with the victim in order to sexually exploit a minor.   See Page 20 of her evaluation.

-12-

5.   Dr. Cooney-Koss concluded that there is minor concern for Ms. Gulisano in terms of sexual pathology because she evidenced no deviant sexual interests or compulsive sexual behaviors, including a sexual interest in minors.   See Page 20 of her evaluation.

6.   Dr. Cooney-Koss opined that Ms. Gulisano's conduct with the victim is a reflection of her Borderline Personality Disorder, and not the result of Antisocial Personality Disorder (such a diagnosis suggests a lack of concern for others and a disregard for the norms and rules of society).   See Page 20 of her evaluation.

7.   Dr. Cooney-Koss opined that her interview of Ms. Gulisano indicated that there was no evidence of pedophilic interests by her.   See Page 18 of her evaluation.

8.   Dr. Cooney-Koss concluded that Ms. Gulisano has the ability to modify the majority of her risk factors so as to become a low risk for future sexual offenses.   See Page 20 of her evaluation.

9.   Ms. Gulisano intends to continue with her mental health treatment and substance abuse treatment.   She intends to start counseling for her inappropriate sexual conduct.

10.   She has received no disciplinary misconducts at the FDC.

11.   She is extremely remorseful for her criminal conduct.

12.   Muck of her criminal conduct was committed at a time when she was under the influence of drugs and alcohol.   She is dedicated to working through her chemical dependence, including involvement in 12-step groups and in professional treatment.

-13-

## Conclusion

The Court should consider every convicted person as an individual and every case as a unique study in human failings which sometimes mitigate and sometimes magnify the crime and punishment to ensue.  *United States v. Gunter*, 527 F.3d 282, 285 (3d Cir.2008); *United States v. Castro-Valenzuela*, 304 Fed.Appx. 986, 989 (3d Cir.2008).   Ms. Gulisano respectfully requests a sentence of a term of imprisonment  of 120 months.   She also requests that the Court recommend to the BOP that:

1.   She is incarcerated at a facility which the BOP has designated as a female facility which regularly houses and treats transexuals or, if this request cannot be accommodated, at FCI-Petersburg (it has a Sex Offender Management Program).

2.   She receives credit for time-served from June 30, 2015 to the present.

3.   She is admitted into the RDAP.

4.   She is afforded the opportunity to undergo sex reassignment surgery as it is necessary for her mental health.

**/s/ Thomas A. Dreyer**
Thomas A. Dreyer, Esquire
6 Dickinson Drive
Building 100 – Suite 110
Chadds Ford, PA  19317
610-358-4454
Attorney for Defendant Justin R. Gulisano

Dated:   May 13, 2018

-14-

<u>**CERTIFICATE OF SERVICE**</u>

        Thomas A. Dreyer, Esquire hereby certifies that he served true and correct copies

of the foregoing Defendant Justin R. Gulisano's Sentencing Memorandum upon the persons

listed below on the date listed below by the Electronic Court Filing ("ECF") System:

        Graham L. Robinson, Esquire
        Assistant United States Attorney
        Nemours Building
        1007 Orange Street - Suite 700
        P.O. Box 2046
        Wilmington, DE  19899-2046

        Carolyn DeMayo
        U.S. Probation Officer
        824 Market Street
        Fourth Floor
        Wilmington, DE  19801

        <u>**/s/ Thomas A. Dreyer**</u>
        Thomas A. Dreyer, Esquire
        6 Dickinson Drive
        Building 100 – Suite 110
        Chadds Ford, PA  19317
        610-358-4454
        Attorney for Defendant Justin R. Gulisano

Dated:  May 13, 2018